# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STEVEN GILBERT,

    Plaintiff,

    v.

R. STOTT, CO II,
WARDEN RICHARD J. GRAHAM,

    Defendants.

Civil Action No.:  ELH-18-1219

## MEMORANDUM OPINION

This civil rights action concerns self-represented plaintiff Steven Gilbert's claim that he was subjected to an excessive use of force when pepper spray was deployed by Correctional Officer R. Stott on July 24, 2017, during an incident at Western Correctional Institution ("WCI"), where Gilbert is incarcerated.  ECF 1; ECF 8.  He has sued CO II R. Stott and Warden Richard Graham.

Defendants have moved to dismiss or, in the alternative, for summary judgment.  ECF 14. The motion is supported by a memorandum (ECF 14-1) (collectively, the "Motion") and numerous exhibits.  Defendants assert, *inter alia*, that Gilbert failed to exhaust administrative remedies and that the force used during the incident was not unconstitutional.  ECF 14.  Defendants filed a supplement to the Motion (ECF 16, ECF 16-1), verifying that video evidence was shown to plaintiff.  Gilbert opposes the motion.  ECF 17.[1]  No reply was filed.

---

[1] Also pending is Gilbert's second motion to proceed in forma pauperis (ECF 9), which shall be granted.

A hearing is unnecessary for determination of the matters now pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons to follow, defendants' Motion shall be construed as one for summary judgment and shall be granted.

## I. Background

Gilbert suffers from chronic bronchitis and claims that his medical condition exempts him from being subjected to pepper spray. ECF 1 at 1. Nevertheless, he states that Officer Stott sprayed him with pepper spray on July 24, 2017, and left him in a holding cell for four hours before allowing him to shower. *Id.* According to Gilbert, when he was provided with a "hot shower," it "intensified the affects [sic] of the spray" and "almost killed" him. *Id.* As relief, he seeks 500 million dollars in damages "for neglect." *Id.*

In his supplemental complaint (ECF 8), Gilbert reiterates that Officer Stott pepper sprayed him in the face. But, he claims he was left in a holding cell for three hours. *Id.* at 1. According to plaintiff, during the three-hour wait he "actually . . . stopped breathing for 3 minutes and almost died." *Id.* In this pleading Gilbert makes no mention of the hot shower exacerbating the effects of the pepper spray, but he increases his demand for damages to 750 million dollars. *Id.*

Defendants do not deny that Gilbert was sprayed with pepper spray on July 24, 2017. But, they explain that the pepper spray was deployed by Officer Larry Teets when Gilbert failed to drop a pool cue he had picked up to use as a weapon during a fight with a fellow inmate. ECF 14-3 (Declaration of Larry Teets).

Officer Teets recounts that he was assigned to housing unit 2, B-tier on the date in question and, as he walked through the lobby area, he looked into rec hall on A-tier and observed Gilbert engaged in a physical fight with inmate Alfred Holloway. *Id.* at 1, ¶ 3. After radioing for help, Officer Teets entered the area where Gilbert and Holloway were fighting and issued direct orders

for them to stop fighting.  *Id*.  Holloway complied with the directive and started walking away from Gilbert.  *Id*.  But, Gilbert did not comply with the order and, instead, used a broken pool cue to strike Holloway in the back of his head as he walked away.  *Id*., *see also* ECF 14 at Ex. 3 (filed separately) (video surveillance).

Several additional direct orders for Gilbert to drop the pool cue and place his hands on the wall were to no avail.  *Id*.  Officer Teets then resorted to use of a short burst of pepper spray to Gilbert's face to gain his compliance.  Gilbert then dropped the pool cue, turned around, and was placed in restraints by Officer C. Shockey.  *Id*. at 1-2, ¶ 4.

The Declaration provided by Teets varies slightly from the statements provided following the incident for purposes of the Use of Force report.  In that report there is no indication that Gilbert struck Holloway in the back of his head after a direct order was issued for Gilbert to drop the pool cue.  Rather, the report simply indicates that Gilbert verbally refused to submit to handcuffing, and Teets then sprayed Gilbert in the face with pepper spray.  *See* ECF 14-4 at 2 (details of use of and effect of use of force by Teets); *id.* at 5 (description of incident); *id.* at 13 (notice of inmate rule violation written by Teets); *id.* at 17 (Memo from Lt. B. Brinegar indicating in part that Holloway suffered an injury to his upper thigh).

However, the video surveillance recording supports Teets' Declaration, as it depicts Gilbert striking Holloway with the pool cue as Teets entered the recreation room.  ECF 14 at Ex. 3 (filed separately).  Further, it shows Teets with his arm extended, as if ordering Gilbert.  Then, the video reflects a quick, single burst of spray deployed by Teets.  *See* ECF 14, Ex. 3.

The reports indicate that Gilbert was provided a shower, but do not indicate when the shower was provided.  ECF 14 at 6 (Report of Lt. Brinegar indicating "[b]oth inmates were offered and accepted a shower").  Gilbert was also evaluated by medical staff and was described as

3

"agitated" and "uncooperative." ECF 14-4 at 12. Otherwise, Gilbert was assessed with stable vital signs, and the only injury noted was a small scratch to the right side of his neck, which was "barely visible." *Id.* He was released back to his housing unit as "medically stable." *Id.*

Officer Russell Stott submitted a Declaration. ECF 14-10. He avers that he was not involved in the incident with Gilbert on July 24, 2017. *Id.*

## II. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222(4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does

not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[2]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet*

---

[2] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

*Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Gilbert has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d

431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## III. Discussion

### A. Exhaustion of Administrative Remedies

Defendants assert that Gilbert failed to exhaust administrative remedies because he did not pursue his claim through the Inmate Grievance Office (IGO) and therefore it must be dismissed pursuant to 42 U.S.C. §1997e. ECF 14. Gilbert does not respond to the allegation that he has failed to exhaust administrative remedies. ECF 17.

The Prisoner Litigation Reform Act provides, in pertinent part, 42 U.S.C. § 1997e:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[3]

---

[3] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc*., 407 F.2d 674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' … normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286

---

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See* Md. Code, Correctional Services Article, § 10-304 *Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he PLRA amendment made clear that exhaustion is now mandatory."). But, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 136 S.Ct. 1850, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855.

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if

possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). But, the *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; the administrative scheme might be so "opaque" as to become "practically speaking, incapable of use"; and prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859-60.

The Fourth Circuit has also addressed the meaning of "available" remedies. In *Moore v. Bennette*, 517 F.3d at 725, it said:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" ("ARP") available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq*.; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against…official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC]…against any officials or employees of the [DOC]…arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; DCD 185-0002 (effective August 27, 2008).

To pursue a grievance, a prisoner confined in a DOC facility may file with the Inmate Grievance Office ("IGO") a grievance against any DOC official or employee. C.S. § 10-206(b). However, if the DOC institution has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02.[4] And, DPSCS has established an administrative remedy procedure process that applies to DOC facilities. OPS.185.0002.02.

_____

[4] OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive"). The ARP Directive was submitted as a defense exhibit in the case of *Payton v. Bishop*, ELH-15-3648, ECF 16-2. Effective August 14, 2015, the ARP Directive establishes the "policy and procedures for an Administrative Remedy Procedure (ARP) . . . to provide a method for resolving an inmate complaint related to specific conditions of confinement." *Id*. Similarly, DCD #185-003 and DCD #185-004 were submitted as exhibits in ELH-15-3645, at ECF 16-3 and 16-4, respectively. These exhibits are subject to judicial notice. In *Anderson v. Fed. Deposit Ins. Corp*.,

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). C.S. § 1-101(k) defines a managing official "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the administrative remedy procedure at the institutional level. DCD # 185-003VI. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05C(2). For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. DCD # 185-004VI.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B; *see also*

_____

918 F.2d 1139, 1141 n. 1 (4th Cir. 1990), the Court recognized that a district court may "properly take judicial notice of its own records."

Moreover, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In particular, pursuant to Fed. R. Evid. 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

DCD 185-002, § VI(N)(1). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, Title 10 of the State Government Article.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The ARP process applies to the majority of inmate complaints. However, it does not apply to case management decisions, which are to be directly grieved to the IGO. OPS.185.0002.05F(1). Nor does it apply to Maryland Parole Commission procedures and decisions to withhold mail, or Prison Rape Elimination Act related claims. OPS.185.0002.05F(2),(4),(5). Those categories of complaints are addressed through separate administrative processes. *Id.*

Finally, the ARP process does not apply to complaints relating to prisoner disciplinary procedures and decisions. OPS.185.0002.05C(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.02.27.33(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. *Id.*, COMAR 12.02.27.33(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.02.27.33(D); *see also* COMAR 12.07.01.05 and .06C. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

A prisoner may pursue the ARP process to allege that correctional officers used excessive force. But, such ARPs may be procedurally dismissed if the Internal Investigations Division has decided to conduct an investigation into the use of force incident at issue in the ARP. OPS.185.0002.05.E(6) & K(3)(e). If this procedural dismissal indicates that no further action may be taken through the ARP process, a prisoner may then file a grievance directly with the IGO, as there would be no further administrative remedies available through the ARP process. G.S. § 10-206(b).

The only effort Gilbert made to access the administrative remedies available to him was to file an ARP on September 29, 2017, indicating that he was pepper sprayed on July 24, 2017, and placed in a holding cell. ECF 14-4 at 18, 20. The ARP was dismissed as untimely. *Id*. Gilbert did not appeal the dismissal to the Commissioner of Correction, nor does he allege that the filing deadline should have been waived. It is therefore clear that he has failed to exhaust administrative remedies, entitling defendants to dismissal of the complaint, without prejudice.

### B. Eighth Amendment Claims

Alternatively, the merits of the claims asserted also warrant judgment in favor of both the named defendants.

### 1. Claims against Stott and Graham

As noted, Officer Russell Stott, who is named as a defendant and whom Gilbert claims deployed pepper spray to his face on the date in question, has submitted a Declaration under oath indicating he was not involved in the incident. ECF 14-10. Gilbert does not dispute thes allegations. ECF 17. Stott's lack of involvement in the incident clearly entitles him to dismissal of the claims against him.[5]

Warden Graham is simply named in the caption of the complaint; plaintiff has set forth no specific allegations against him. ECF 1; ECF 8. To the extent Gilbert names Graham as a defendant because he is a supervisor, that alone does not suffice to impose liability on Graham.

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock*

---

[5] Plaintiff makes no claim of bystander liability. *See Brooks v. Johnson*, ___ F.3d ___, 2019 WL 2063365, at *3 (4th Cir. May 10, 2019).

*v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of a subordinate's misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

As noted, there are no allegations raised against Warden Graham. Therefore, supervisory liability has not been adequately pled.

## 2.     Claims against actual participants

Gilbert did not name the officers actually involved in the incident of July 24, 2017. But, had he done so, the suit would still fail.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's*

*Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox*, 877 F.3d at 170; *Love-Lane*, 355 F.3d at 782; *Trulock*, 275 F.3d at 402.

The Eighth Amendment to the Constitution is at issue here. It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v.*

*Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).[6] In *Graham v. Connor*, 490 U.S. 386 (1989), the touchstone case with respect to excessive force claims under § 1983, the Supreme Court rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." *Id.* at 393. The Court held that claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against "unreasonable" seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of "cruel and unusual punishment"; and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits "the use of excessive force that amounts to punishment." *Id.* at 394 & n.10.

The contours of a prisoner's constitutional right under the Eighth Amendment to be free from excessive force at the hands of corrections staff has long been established. As the Fourth Circuit recently noted, an inmate's Eighth Amendment excessive force claim "involves both an objective and a subjective component." *Brooks*, 2019 WL 2063365, at *5.

---

[6] In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. It is not at issue here.

The objective component does not set "a high bar," and "asks whether the force applied was sufficiently serious to establish a cause of action." *Id.* The subjective component "asks whether the officers 'acted with a sufficiently culpable state of mind[.]'" *Id.* (Citation omitted). And, "this is a demanding standard." *Id.*

Whether force used by prison officials was excessive is determined by inquiring if the "'force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm.'" *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Notably, the absence of significant injury is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, ___ (2010).

The extent of injury is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had "the good fortune" to escape serious harm. *Wilkins*, 559 U.S. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") And, only something more than de minimis force is required. *Hudson*, 503 U.S. at 10; *see Brooks*, 2019 WL 2063365, at *5.

If "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. In that circumstance, "no particular extent of physical injury is required to establish an excessive force claim under the Eighth Amendment." *Sawyer v. Asbury*, 537 Fed. App'x 283, 290 (4th Cir. 2013). On the other hand, "'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).

The "state of mind required . . . is 'wantonness in the infliction of pain.'" *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 322). And, this "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted). In this regard, the court must consider the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321; *see Iko*, 535 F.3d at 239.

As noted, this case involved the use of pepper spray. "'[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas *or other chemical agents in quantities greater than necessary* or for the sole purpose of infliction of pain." *Iko*, 535 F.3d at 240 (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis added in *Iko*). However the use of pepper spray does not amount to "per se . . . cruel and unusual punishment," *McCargo v. Mister*, 462 F. Supp. 813, 818 (D. Md. 1978), and is permissible when used to control a recalcitrant inmate. *Williams*, 77 F.3d at 763.

The focus of the analysis for a claim of excessive use of force, as noted, is on the subjective intent of the defendant, *i.e.*, whether the defendant acted with a sufficiently culpable state of mind. *See Iko*, 535 F.3d at 238 (denying qualified immunity to correctional officer who deployed chemical agent into inmate's cell after inmate complied with orders, did not react violently, and officer failed to take steps to ameliorate effects of chemical agent).

A subjective intent to cause harm is supported where an officer uses more than a reasonable amount of a chemical agent to restore discipline. *See, e.g.*, *Furnace v. Sullivan*, 705 F.3d 1021,

1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). Under some circumstances, however, multiple applications of a chemical agents have been found reasonable where an inmate repeatedly ignores orders issued by a correctional officer. *See Williams*, 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan*, 19 Fed.Appx. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick*, 918 F.Supp. 977, 984 (N.D.W.Va. 1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). And, use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

In his opposition, Gilbert reiterates his claim that the decontamination shower he received intensified the effect of the pepper spray and caused him to stop breathing due to his chronic bronchitis. ECF 17 at 1. He otherwise does not dispute any of the facts as alleged by defendants, but points out that the reports erroneously describe his race as "white;" Gilbert is African American. *Id.* Notwithstanding that error, Gilbert does not deny he refused to comply with at least two direct orders to submit to restraints and surrender a weapon. His refusal to comply with

direct orders to stop fighting and disarm himself was sufficient cause for the use of a chemical agent against him. What is described as a "short burst" of pepper spray in Officer Teets' report was a reasonable, tempered response in light of the undisputed dangerous circumstances. Thus, had Gilbert named Officer Teets as a defendant in this action, he could not sustain an Eighth Amendment claim against him.

Whether Gilbert has a condition (chronic bronchitis) that exacerbates use of a chemical agent against him does not change the analysis. Gilbert was engaged in a physical fight with another inmate, was holding a broken pool cue that he used as a weapon in the fight, and chose to refuse to obey direct orders to cease fighting. Under such circumstances this court is not willing to charge the responding officer with the responsibility to obtain medical evidence regarding the recalcitrant inmate before deciding to intervene through the limited use of pepper spray.

To the extent Gilbert's claim implicates one involving an alleged deliberate indifference to a serious medical need, the claim also fails. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko*, 535 F.3d at 241.

Objectively, the medical condition at issue must be serious. *See Hudson*, 503 U.S. at 9 (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210

(quoting *Iko*, 535 F.3d at 241); *see also Scinto*, 841 F.3d at 228 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable.").

The undisputed evidence confirms that Gilbert was seen by medical staff immediately following the use of pepper spray against him, where he was assessed as medically stable. Gilbert has not alleged that either of the named defendants, or other members of the correctional and medical staff, were aware he was in respiratory distress, either while he waited for a shower or during his shower. Even assuming Gilbert waited three or four hours to receive a shower, without evidence that any medical or correctional staff were actually aware of Gilbert's alleged respiratory distress, there is no basis for this court to find that he was subjected to deliberate indifference to a serious medical need. The defendants simply cannot be said to have had a callous disregard for a medical condition of which they were not made aware.

A separate Order follows.

May 17, 2019                                        _____/s/_____
Date                                               Ellen L. Hollander
                                                   United States District Judge